OPINION
Appellant, Estate of Louis Wagner (hereinafter "Wagner"), appeals from a judgment of the Common Pleas Court of Lake County entered on September 18, 1997.
In May, 1994, appellee, Michael J. Geier ("Geier"), brought an action under the Fraudulent Transfer Act against Wagner, National GG Industries, Inc. ("National GG"), Ace Lakefront Properties, Inc. ("Ace Lakefront"), John D. Gnandt ("Gnandt") and others. Judgment was granted for Geier against defendants National GG and Wagner, jointly and severally, in the amount of $244,066, and a judgment lien was imposed on the parcel of land in question, owned by defendant, Ace Lakefront. Ace Lakefront is controlled by Gnandt. In a companion case, Ace Lakefront has appealed the imposition of the judgment lien.[1]
In 1983, the corporation National GG was formed by Geier and Gnandt for the purpose of buying a property in Fairport Harbor, Ohio. To finance the purchase of the property, National GG took a loan from Huntington Bank for $225,000.
In October of 1986, Wagner purchased all of Geier's shares in National GG. In exchange for Geier's shares, Wagner took over the Huntington Bank loan obligation and National GG issued a promissory note for $73,000 to Geier, the principal being payable in 1991. Under its new structure, Wagner owned (45%), Gnandt (45%) and Wagner's attorney, David King (10%). In conjunction with his purchase of stock, Wagner made a working capital loan to National GG. A term of the transaction was that until both the Huntington Bank and Wagner loans were paid in full, Wagner was to retain sole control of corporate decisions.
By 1988, problems developed between Wagner and Gnandt, in part because Wagner was excluding Gnandt from the operation of the business and would not give him access to the company's financial statements. In 1990 litigation began between the parties to this case, and parties not discussed herein, involving multiple claims and counterclaims. In May of 1993 the lawsuits were settled. All the defendants in this case participated in the settlement negotiations. Geier was not included in the settlement negotiations, but a decision was taken with respect to his counterclaim.
To settle with Gnandt and Ace Demolition, National GG and Wagner transferred the Fairport Harbor property to Ace Lakefront, a company designated by Gnandt. This company was created solely for the purpose of taking title to the property. At that time, the property was National GG's single valuable asset. As part of its plan, National GG decided it would dismiss its claims against Geier and confess judgment for the full amount of Geier's counterclaim. But the result of the settlement between the parties excluding Geier was that National GG had little or no remaining value. The conveyance of the property to Ace Lakefront effectively rendered Geier's judgment worthless. The transfer occurred before the journalization on June 14, 1993 of the judgment in favor of Geier. On June 22, 1993, Geier filed his Certificate of Judgment in Lake County to perfect his lien on the property. Geier then discovered the property was no longer owned by National GG.
On May 18, 1994, Geier filed suit in Lake County alleging a fraudulent conveyance and an unlawful preference of certain corporate creditors over himself. His suit named National GG, Wagner, Sara Wagner, Gnandt, Ace Lakefront, and John Doe as defendants. Geier's complaint stated in paragraph nine that Wagner was personally liable for his damages. Wagner filed a motion for summary judgment on August 2, 1996, in which he asserted that he could not be held personally liable for actions he took as a corporate representative on behalf of National GG. The motion was denied. A jury trial began on December 3, 1996.
At the close of evidence Wagner moved for a directed verdict which was denied. The court directed a verdict on behalf of Gnandt. Geier dismissed Sara Wagner from the case. The court ruled that no money damages were recoverable against Ace Lakefront, but bifurcated Geier's equitable claim against Ace Lakefront to be tried to the court at a later date. Geier's cases against Wagner and National GG were submitted to the jury.
After the close of evidence two issues relevant to this appeal arose. First, Wagner's counsel requested the jury be instructed that, as opposed to the jury awarding money damages against Wagner, the court might place a lien on the property now owned by Ace Lakefront, or the court could order Ace Lakefront to re-convey the property to National GG. This request was denied. Second, over Wagner's objection, closing argument was made and the jury was instructed on the law regarding "piercing the corporate veil." Wagner claimed he was not given fair notice that piercing the corporate veil would be an issue in this trial, and that Geier was raising the issue for the first time after the close of evidence. The court permitted the argument and gave the instruction.
The court submitted three interrogatories to the jury requesting specific findings of fact. First, the jury was asked if the Fairport Harbor property constituted substantially all of the assets of National GG at the time of its transfer. Second, the jury was asked if Wagner had so complete control over National GG that the company had no separate mind, will or existence of its own. Third, the jury was asked if the transfer of the property to Ace Lakefront was made to hinder, delay or defraud a creditor of National GG. The jury answered the three interrogatories unanimously in the affirmative. The jury returned a verdict in favor of Geier.
On September 18, 1997, after the court resolved the case against Ace Lakefront, the court entered judgment in favor of Geier against Wagner and National GG, jointly and severally, awarding Geier $244,300. From this judgment, Wagner filed timely notice of appeal, assigning the following three errors:
 "[1]. The trial court erred in overruling defendant Louis Wagner's motion for a directed verdict."
 "[2]. The trial court erred in instructing the jury, over Louis Wagner's objection, and submitting the case to the jury on the unpleaded theory of piercing the corporate veil of National GG Industries, Inc."
 "[3]. The trial court erred in not explaining to the jury that there was an additional remedy available to plaintiff in the form of the impression of a lien on the parcel transferred to Ace Lakefront Properties, Inc. or reconveyance to National GG Industries, Inc."
Wagner argues in his first assignment of error that the "piercing the corporate veil" theory of liability should not have been submitted to the jury. In the absence of the remedy "piercing the corporate veil", Geier's lawsuit would not present a claim under which recovery could be had against Wagner. Therefore, following his argument, the court should have directed a verdict. Similarly, Wagner's second assignment also argues this issue should not have been submitted to the jury. As the first two assignments are interrelated, we shall address them together.
In both assignments, Wagner argues that because Geier did not specifically set forth the "piercing the corporate veil" theory of liability in his complaint, the court should not have permitted the theory of liability to be presented to the jury. Secondly, he argues the issue was not tried by the implied consent of the parties. Lastly, he claims that as a result of lack of notice that piercing the corporate veil would be an issue at trial, his defense was unfairly prejudiced. Wagner's objections are essentially procedural in nature.
With respect to the law regarding "piercing the corporate veil", in Belvedere Condominium Unit Owners' Assn. v. R.E. RoarkCos., Inc. (1993), 67 Ohio St.3d 274, the Supreme Court stated:
 "The corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong."
 Id. at paragraph three of the syllabus.
In the case sub judice, the jury did find that Wagner exercised such complete control over National GG that it had no separate mind, will, or existence of its own. Wagner does not contest the substance of this finding on appeal. Wagner also freely admits there was a fraudulent transfer and does not appeal that issue either. Nor does Wagner dispute that Geier has suffered an injury in so far as a judgment against National GG alone is worthless. Wagner's contention is simply that the question of his personal liability should never have reached the jury due to Geier's failure to specifically state in his complaint, or in the subsequent litigation, he intended to "pierce the corporate veil." Wagner claims on appeal that, in so far as his personal liability is concerned, he was "ambushed."
Based on the pleading, the pretrial activity, and the conduct of the trial itself, we conclude the trial court was correct in permitting the "piercing the corporate veil" theory of liability to be presented to the jury. In Fancher v. Fancher (1982),8 Ohio App.3d 79, the court discusses claim for relief pleading and adopted the following principles in construing Civ.R. 8(A), stating:
 "` * * * the complaint, and other relief-claiming pleadings need not state with precision all elements that give rise to a legal basis for recovery as long as fair notice of the nature of the action is provided. However, the complaint must contain either direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested or intended by the pleader, or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.' (Emphasis added.) 5 Wright Miller, Federal Practice Procedure: Civil (1969), at 120-123, Section 1216." Id. at 83.
The issue Wagner raises with respect to Geier's pleading is that it did not expressly state that Geier was, to paraphrase Wagner, "making a claim for piercing the corporate veil." Piercing the corporate veil is not a claim, it is a remedy encompassed within a claim. It is a doctrine wherein liability for an underlying tort may be imposed upon a particular individual. In his pleading, paragraph nine, Geier did state his intention to hold Wagner personally liable for the transfer of the property in question. In paragraph ten Geier characterized this transfer as a violation of the Ohio Uniform Fraudulent Transfer Act. The pleading informed Wagner of the tortious act and of Geier's intent to hold him personally liable for it. Because the promissory note Geier was attempting to collect on was issued by National GG, a corporation in which Wagner was an officer, piercing the corporate veil is the only way Wagner could be held personally liable. It seems a fair inference that evidence on this issue would be introduced at trial.
Wagner claims that the first time he realized Geier was going to seek to "pierce the corporate veil" was after the close of evidence when Geier was responding to Wagner's argument on the motion for a directed verdict. Two years had transpired between the filing of the suit in 1994 and the trial. In this time period there was a substantial amount of pretrial litigation and negotiation during which Wagner was always represented by counsel. Wagner's awareness of the issue is reflected in his own motion for summary judgment, filed on August 2, 1996, wherein he asserted the defense that he could not be held personally liable for actions he undertook on behalf of the corporation. This motion was denied and the case proceeded to trial. The argument that Wagner did not have notice is unconvincing.
In this case the issue was tried by the implied consent of the parties. Civ.R. 15(B) states:
 "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. Failure to amend as provided herein does not affect the result of the trial of these issues.* * *"
Three days of testimony were heard in this trial, a large part of which was related to Wagner's control of the corporation and how that was exercised. Based on the evidence presented at trial, the jury did find that National GG had no separate mind, will or existence of its own, apart from Wagner. Wagner does not appeal the substance of the jury's finding, rather he argues the jury should not have been permitted to consider the relationship of the evidence to its legal conclusion. Nevertheless, throughout the trial, the only way Wagner could be found liable was if the corporate veil was pierced. Under the circumstances, it is fair to infer that they were aware of the issue. Based on the pleading, the pretrial activity, and the conduct of the trial itself, we conclude that this issue was tried by the implied consent of the parties.
With respect to Wagner's third assignment of error, he cites no authority which states a trial court must instruct a jury on remedies a plaintiff may have against parties not before the jury.
The judgment of the trial court is affirmed.
FORD, P.J., CHRISTLEY, J., concur.
[1] The judgment of the trial court was affirmed on December 23, 1999.